**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ON-SITE SCREENING, INC. and | ) | |
| RONALD L. LEALOS, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 09 C 6084 |
| | ) | |
| v. | ) | Judge Joan B. Gottschall |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiffs On-Site Screening, Inc. and Ronald L. Lealos (collectively "On-Site")

filed a complaint seeking to hold the United States liable under the Federal Tort Claims

Act ("FTCA"), 28 U.S.C. §§ 1346, 2671-2680, for the loss of property allegedly seized

by the Food and Drug Administration ("FDA"). The United States moved to dismiss On-

Site's complaint because the FTCA's waiver of sovereign immunity does not extend to

tort actions that arise from the detention of goods by a law enforcement officer. 28

U.S.C. § 2680(c).

## I. BACKGROUND

During an October 15, 2004 inspection of a facility in Bedford Park, Illinois,

inspectors for the Village of Bedford Park discovered blood and saliva samples marked

as HIV positive. (Compl. ¶ 7.) According to its complaint, On-Site was storing the

samples at the facility, and the samples were related to On-Site's business of developing

a method for detecting the HIV virus in saliva. (*Id*.) The Village inspectors allegedly

"contacted the FDA who immediately or very shortly thereafter took possession of" the

samples and related documentation. (*Id*. ¶ 8) On-Site further alleges that it was "notified

of the above described seizure by the FDA," and, on October 29, 2004, it wrote to the FDA demanding the return of its property and requesting that, in the meantime, the specimens be kept frozen. (*Id.* ¶ 8.) On-Site attached to its complaint the October 29 letter from Lealos. (*Id.* Ex. C.) The FDA allegedly "continued to maintain control over" the samples for four years, and On-Site employees communicated with FDA Special Agent Jocelyn Ellis regarding proper storage of the samples during that time period. (*Id.* ¶ 9.)

Upon receiving notification that the FDA had completed its investigation, On-Site alleges that it contacted Special Agent Ellis numerous times and wrote her a letter to inform her that it sought to pick up the frozen samples and other materials. (*Id.* ¶¶ 10-11.) On-Site attaches to its complaint a February 12, 2009 letter from Special Agent Daniel Henson of the FDA Office of Criminal Investigations ("OCI") to Lealos. (*Id.* Ex. D.) The letter states:

> The investigation involving Know HIV (1+2) Pro-Pack testing kits has been concluded, and the Food and Drug Administration, Office of Criminal Investigations (FDA/OCI) has items that require disposition. If you desire return of the items, please contact Special Agent Jocelyn Ellis . . . within twelve (12) days of receipt of this letter, to make arrangements to pick up the items. If you do not make arrangements to pick up the items and wish that the FDA/OCI destroy the items at its expense, you do not need to respond to this letter. If no response to this letter is received from you within the allotted twelve (12) days, then the FDA/OCI will destroy the items.

(*Id.* Ex. E.) On-Site also attaches a letter dated March 15, 2009 from Lealos to Ellis noting that Gary Richard Campbell has permission to pick up "documents and frozen specimens." (*Id.*) According to the complaint, Special Agent Ellis called an On-Site employee shortly after receiving the letter "to inform him, in substance, that 'the motor in

the freezer in the lab where the specimens were sorted had recently broken down and the specimens had spoiled and were disposed of.'" (*Id.* ¶ 12.)

On-Site submitted an administrative claim to the Department of Health and Human Services on June 19, 2009 seeking close to $2 million for the destruction of its property. (*Id.* ¶ 5, Ex. A.) The government rejected the claim in a letter dated July 27, 2009 which stated, in part: "The evidence fails to establish that the alleged injuries were due to the negligent or wrongful act or omission of a federal employee acting within the scope of employment." (*Id.* Ex. B.) The letter provided no further explanation for the disposition of On-Site's claim. On-Site filed a complaint in this court on September 29, 2009. The government has moved to dismiss.

## II. ANALYSIS

The federal government is immune from suits for damages unless it explicitly consents to be sued. *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999). In the FTCA, Congress waived the United States' immunity for claims arising out of torts committed by employees of the federal government. *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 217-18 (2008). Specifically, the government's immunity is waived when there are "claims against the United States, for money damages . . . for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). This waiver, however, is subject to certain exemptions. *See* 28 U.S.C. § 2680. Section 2680(c) exempts from the waiver "any claim arising in respect of . . . the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer." The United States argues that this

exemption applies here and moves to dismiss On-Site's tort claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

On-Site responds with a number of arguments. It contends that its property was never "detained;" that it has never alleged that the government official responsible was a "law enforcement officer;" that an exception to § 2680(c) applies to this case; and that the government has waived any argument that immunity applies. Above all, On-Site contends that discovery is necessary to determine whether the § 2680(c) exemption applies, and, thus, dismissal is not proper at this point.

## A. Legal Standard

In considering a motion to dismiss, the court must "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [the plaintiff's] favor." *Tamayo v. Blagojevich,* 526 F.3d 1074, 1081 (7th Cir. 2008). Legal conclusions, however, are not entitled to any assumption of truth. *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009). A plaintiff generally need not plead particularized facts; Federal Rule of Civil Procedure 8(a)(2) requires that the complaint set forth only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("Our system operates on a notice pleading standard; *Twombly* and its progeny do not change this fact."). Still, the

---

[1] The United States also argues that On-Site's claim should be dismissed for lack of jurisdiction pursuant to Rule 12(b)(1). The government recognizes that the Seventh Circuit has taken the "minority position" that exceptions from the FTCA's waiver of immunity should not be characterized as jurisdictional. *See Wisc. Valley Improvement Co. v. United States*, 569 F.3d 331, 334 (7th Cir. 2009); *Williams v. Fleming*, 597 F.3d 820, 823 (7th Cir. 2010). However, the government notes its disagreement with the Seventh Circuit and preserves the argument for appeal.

factual allegations in the complaint must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

## B. Waiver of Immunity

As an initial matter, On-Site argues that the government is barred from raising the immunity argument. In responding to On-Site's administrative claim, the government did not list immunity as a reason for denying the claim, nor did the government, according to On-Site, ever use the terms "detention" or "law enforcement officer" in its dealings with the plaintiff.

The only authority cited in support of this argument, *Parrot v. United States*, 536 F.3d 629, 634 (7th Cir. 2008), is clearly inapposite. The passage from *Parrot* cited by On-Site dealt with whether § 2680(c) raised a jurisdictional bar to an FTCA claim; the case had nothing to say about the administrative claims process. The court considers On-Site's argument waived because it is "unsupported by pertinent authority." *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991).

## C. Meaning of "Detention"

On-Site challenges the government's contention that the FDA "detained" the blood and saliva samples. Instead, On-Site argues that the government "seized" the samples, and the FTCA exempts claims arising in respect of detentions but not seizures. The FTCA does not define the term "detention." Nor has the Seventh Circuit provided a definition. *See Parrot*, 536 F.3d at 636 ("This court has not previously had occasion to tackle the question what constitutes a "detention" for purposes of § 2680(c).").

"In analyzing the language of a statute, we give the words their ordinary meaning unless the context counsels otherwise." *United States v. Webber*, 536 F.3d 584, 593 (7th

Cir. 2008).  Webster's Dictionary defines detention as "1: the act or fact of detaining or holding back; *esp*: a holding in custody . . . ."  Webster's Ninth New Collegiate Dictionary 345 (1985).  On-Site has alleged that the FDA "took possession" of its samples and "continued to maintain control over" the samples for the next four years.  (Compl. ¶ 7, 9.)  In other words, the FDA first seized the property and then held it in custody, or detained it, for four years.  On-Site makes no argument that the context of the statute suggests some specialized meaning of detention, and the court cannot conceive of a reason to stray from the ordinary meaning of the word.  Courts have applied the § 2680(c) exemption in cases analogous to this one.  *See Solus Ocean Sys. Inc. v. U.S. Customs Serv.*, 777 F.2d 326, 328-29 (5th Cir. 1985) (barring suit over property seized by customs, detained for a period of time, and later sold without notifying owner); *Hallock v. United States*, 253 F. Supp. 2d 361, 368 (N.D.N.Y. 2003) (holding that § 2680(c) barred suit by plaintiff whose computer equipment had been seized by DEA and subsequently returned in damaged condition).

On-Site points out that its complaint does not use the term "detention;" the complaint describes the FDA's actions as a "seizure."  (*Id.* ¶ 7-8.)  Further, On-Site seeks relief under a number of legal theories, but not for "negligent detention."  (*Id.* ¶ 13-16.)  However, the FTCA exempts "[*a*]*ny claim* arising in respect of . . . the detention of any goods, merchandise, or other property . . . ."  28 U.S.C. § 2680(c) (emphasis added).  On-Site cannot plead its way around sovereign immunity simply by avoiding magic words.  Further, On-Site argues that the government never used the term "detention" to describe its own actions, and that FDA regulations employ a definition of "detention" which would be inapplicable to this case.  But the court cannot imagine how these arguments

can be relevant to the analysis of what Congress intended the word to mean in § 2680(c). The FDA regulations do not appear to interpret the meaning of "detention" in the FTCA, and, in any event, § 2680(c) applies to all federal law enforcement officers, not just those employed by the FDA. *See Ali*, 552 U.S. at 227-28. Accordingly, the FDA's use of the term "detention" can be of no force in the court's analysis

### D. Detention by a "Law Enforcement Officer"

Next, On-Site takes issue with the government's contention that OCI agents were responsible for the seizure and detention of its property. The government argues at length that OCI agents are law enforcement officials, and On-Site does not respond with any counter-argument.[2] Instead, On-Site contends that it does not know which officials

---

[2]     In *Ali*, the Supreme Court resolved a dispute among the circuits by holding "that the broad phrase 'any other law enforcement officer' covers all law enforcement officers," and not just those acting in a customs or excise capacity. 552 U.S. at 227-28. The Court did not define "law enforcement officer," other than to note that immunity would not "turn on the type of law being enforced." *Id.* at 220-21. The dissent in *Ali* criticized the majority's interpretation of the provision as encompassing "tens of thousands of officers performing unrelated tasks." *Id.* at 246-47 (Breyer, J., dissenting).

    Because § 2680(c) provides no definition of a "law enforcement officer," at least two circuits have looked to another exemption to the FTCA in 28 U.S.C. § 2680(h) for guidance. *See Bramwell v. United States Bureau of Prisons*, 348 F.3d 804, 807 (9th Cir. 2003); *Chapa v. United States Dep't of Justice*, 339 F.3d 388, 390 (5th Cir. 2003). Section 2680(h) defines an "investigative or law enforcement officer" as "any officer of the United States who is empowered by law to execute searches, to seize evidence or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h). Although the subsection at issue in this case is § 2680(c) and not § 2680(h), the definition in § 2680(h) is instructive because the phrase "law enforcement officer" appears in both sections. *Bramwell*, 348 F.3d at 807; *Chapa*, 339 F.3d at 390. Case law indicates that the same words appearing in different sections of a statute should be considered *in pari materia*. *Erlenbaugh v. United States*, 409 U.S. 239, 243 (1972).

    Other federal rules and statutes define "law enforcement officer" in a similar way. For example, the governing statute for the Civil Service Retirement System defines "law enforcement officer" as "an employee, the duties of whose position are primarily the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of the United States . . . ." 5 U.S.C. § 8331(20). The Federal Rules of Criminal Procedure provide that a "federal law enforcement officer" is "a government agent . . . who is engaged in enforcing the criminal laws and is within any category of officers authorized by the Attorney General to request a search warrant." Fed. R. Crim. P. 41(a)(2)(C).

    Pursuant to the Federal Food Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 301, *et seq.*, the secretary of the FDA may "conduct examinations and investigations . . . through [individuals] . . . duly commissioned by the Secretary as an officer of the Department." 21 U.S.C. § 372. In 1985, the FDA commissioned the OCI to "conduct and coordinate investigations of suspected criminal violations of" statutes administered by the FDA and "other statutes including applicable Title 18 violations of the United States Code (USC); and to collect evidence to support successful prosecutions through the federal or state

at the FDA seized its property and that it is entitled to discovery on this issue. If the responsible officials are not law enforcement officers, then the § 2680(c) exemption does not apply.

The government does not argue that all FDA officials are law enforcement officers. It contends that OCI agents are the only officials referenced in the complaint and attachments, and that On-Site presents no other viable theory about who seized its property. Indeed, On-Site concedes that "Plaintiffs' understanding of the Defendant's actions are [*sic*] limited." (Pl.'s Resp. at 8.) On-Site's complaint alleges that "the FDA" seized the samples, without specifying a particular officer or unit. (Compl. at ¶¶ 7-8.) However, On-Site attached to the complaint correspondence with OCI (Compl. Exs. C-E), and the complaint states that On-Site communicated with Special Agent Jocelyn Ellis (Compl. ¶¶ 9-12). The correspondence attached to the complaint and briefing by the government identifies Ellis as an OCI agent.

In considering a motion to dismiss, courts "consider documents attached to the complaint as part of the complaint itself." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010). "Such documents may permit the court to determine that the plaintiff is not entitled to judgment." *Id*. Here, the attached correspondence suggests that On-Site's property was detained by OCI agents. However, these documents are not conclusive, and the court may not resolve factual disputes at this stage of the litigation. It must draw all inferences in the plaintiff's favor. *Id.* at 763. On-Site need "provide only

---

court systems as appropriate." *Mission Statement*, FDA Office of Criminal Investigations, available at http://www.fda.gov/ICECI/CriminalInvestigations/ucm123027.htm (last visited July 28, 2010). OCI agents also have federal statutory authority to "obtain and execute arrest and search warrants [and] carry firearms." *Who are the OCI Special Agents*, FDA Office of Criminal Investigations, available at http://www.fda.gov/ICECI/CriminalInvestigations/ucm123037.htm (last visited July 28, 2010); *accord* 21 U.S.C. § 372. Because OCI officials are authorized to investigate violations of the FDCA, seize evidence for the purpose of FDA investigations, carry firearms, and implement search and arrest warrants, OCI agents fit within the definitions of law enforcement officers discussed above.

'enough detail [in its complaint] to give the defendant fair notice of what the claim is and the grounds upon which it rests . . . .'" *Tamayo*, 526 F.3d at 1083. On-Site's complaint meets this standard. It is entitled to obtain discovery to determine which government officials detained its property, and it need not trust the government's representations. The court is not permitted to dismiss a complaint because it believes that the plaintiff's chances of success are low or that its theory of the case is improbable. *Twombly*, 550 U.S. at 556.

### E. Exception to § 2680(c) for Property Seized for the Purpose of Forfeiture

Finally, On-Site argues that an exception to § 2680(c) could apply in this case because the samples may have been seized for the purpose of forfeiture. 28 U.S.C. § 2680(c)(1). On-Site claims that it has no information about the motives of the FDA officials who seized its samples, but it points to cases noting that the FDA has authority to initiate forfeiture proceedings under 21 U.S.C. § 334. The parties do not discuss whether that provision or any other rule would have permitted the seizure in this case. The government argues that forfeiture is not at issue here because no forfeiture proceedings were ever initiated. However, § 2680(c)(1) does not require the initiation of formal proceedings. It requires only that the property have been "seized for the purpose of forfeiture under any provision of Federal law providing for the forfeiture of property . . . ."[3] If the FDA seized On-Site's samples for the purpose of forfeiture, then immunity

---

[3] The exception also requires that, "the interest of the claimant was not forfeited," "the interest of the claimant was not remitted or mitigated (if the property was subject to forfeiture)," and "the claimant was not convicted of a crime for which the interest of the claimant in the property was subject to forfeiture under a Federal criminal forfeiture law." 28 U.S.C. § 2680(c)(2)-(4). No party has suggested that these requirements are at issue, and the court will not address them *sua sponte*.

would not be available.[4] The court cannot resolve this factual dispute on a motion to dismiss.

## III. CONCLUSION

Recognizing that the Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation," *Hunter v. Bryant*, 502 U.S. 224, 227 (1991), the court will give the parties 30 days to conduct discovery limited to two questions: 1) which government officials detained On-Site's property, and 2) what the purpose was for the seizure. After this initial discovery is complete, the government will be permitted to move for summary judgment on the issue of immunity. For the reasons stated above, the United States' motion to dismiss is denied.[5]

ENTER:


_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge


DATED: July 30, 2010

---

[4]     On-Site also argues that § 2680(f) (dealing with "claim[s] for damages caused by the imposition or establishment of a quarantine") or § 2680(h) (dealing with "claim[s] arising out of . . . misrepresentation, deceit, or interference with contractual rights") may apply to this case. On-Site appears to believe mistakenly that these provisions create exceptions to § 2680(c). In fact, these two provisions are additional exemptions from the FTCA waiver of immunity; thus, if they applied, they would provide bases for establishing government immunity.

[5]     The government also argues in a footnote that, should its primary argument be rejected, plaintiff Lealos should still be dismissed from the action. (Mot. at 5 n.4.) 28 U.S.C. § 2675 requires that an FTCA claimant seek relief from the appropriate administrative agency before initiating suit. On-Site attached to its complaint an administrative claim listing only On-Site Screening, Inc. as the claimant. (Compl. Ex. A.) The claim is signed: "Ronald L. Lealos CEO/President." (*Id.*) The government cites only the statute in support of its argument; On-Site does not respond in its brief; and the government reiterates its argument in another footnote in its reply without additional citation. (Reply at 1 n.1.) Arguments made only in footnotes of a brief on a motion to dismiss may be considered forfeited. *Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 765 n.6 (N.D. Ill. 2008). The government's argument is not fully developed as it did not cite any caselaw to support its contention that Lealos' signature is insufficient to meet the requirement of exhaustion of administrative remedies. The court thus declines to consider the argument at this time.