UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ON-SITE SCREENING, INC. and RONALD L. LEALOS, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | Case No. 09 C 6084 <br><br> Judge Joan B. Gottschall |

## **MEMORANDUM OPINION AND ORDER**

### **I. BACKGROUND**

Plaintiffs On-Site Screening, Inc. and Ronald L. Lealos (collectively, "On-Site") filed a complaint seeking to hold the United States liable under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671-2680, for the loss of property allegedly seized by the Food and Drug Administration ("FDA"). The court detailed the background in its prior memorandum opinion, *see On-Site Screening, Inc. v. United States*, No. 09 C 6084, 2010 WL 3025039 (N.D. Ill. July 30, 2010), and thus only briefly sketches the relevant facts here.

In 2004, On-Site was storing biological samples—some of which were HIV positive—in a facility in Bedford Park, Illinois. On-Site had obtained the samples as part of its attempt to develop a medical device capable of detecting HIV in saliva. When these samples were discovered by the Village of Bedford Park, their existence was reported to FDA. Shortly thereafter, the samples were removed from the premises. On-Site sent a request to FDA asking that the samples be stored in a freezer. The samples were in fact stored under appropriate conditions with the Illinois Department of Public

Health. At some point, however, the freezer containing the samples failed. FDA did not discover the failure until well after the samples had been destroyed. Upon being informed of the loss, On-Site submitted an administrative claim to the Department of Health and Human Services in which it sought close to $2 million for the destruction of its property. That claim was rejected, and On-Site filed a complaint in this court seeking compensation for the loss of the samples.

The government moved to dismiss, arguing that the FTCA's waiver of sovereign immunity did not extend to tort actions arising from the detention of goods by a law enforcement officer, *see* 28 U.S.C. § 2680(c), and that the only relevant exception (forfeiture under § 2680(c)(1)) did not apply. This court found that the facts as pleaded established that FDA had "detained" the goods, but on the record before it, the court was unable to conclusively determine (1) whether that detention was effected "by a law enforcement officer," or (2) whether FDA had seized the property "for the purpose of forfeiture." *See On-Site Screening*, 2010 WL 3025039, at *3-4. Thus, the court denied the government's motion, and provided the parties with a limited discovery period in which to investigate these issues. *Id.* at *5. The court also informed the parties that the government would be permitted to move for summary judgment upon completion of discovery. (*See* Mem. Opinion, ECF No. 19.)

After discovery was completed, On-Site sought leave to file an amended complaint.[1] Upon being informed that the government wished to file a motion for summary judgment, the court entered a combined briefing schedule. Both issues are now

---

[1] Although the court had instructed On-Site to file its motion seeking leave to file an amended complaint by January 11, 2011, On-Site actually filed the amended complaint that day; it did not file the motion seeking leave until January 25, 2011. As this appears to be an inadvertent oversight (and in any event, the mistake has not created any prejudice), the court will consider the motion timely.

fully briefed. For the reasons set forth below, the motion for summary judgment is granted, and the motion for leave to file an amended complaint is denied as futile.

## II. LEGAL STANDARD

Once a responsive pleading is filed, a plaintiff can amend its complaint "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). That is not to say that leave is automatically granted; in fact, "[District] courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Johnson v. Cypress Hill*, 641 F.3d 867, 872 (7th Cir. 2011) (quoting *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009)) (alteration in original). "An amendment is a 'futile gesture' if the amended pleading could not survive a motion for summary judgment." *Wilson v. Am. Trans Air, Inc.*, 874 F.2d 386, 392 (7th Cir. 1989).

Summary judgment is warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On summary judgment, all facts and any inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010). The court is not required to draw every conceivable inference in the non-movant's favor; instead, only *reasonable* inferences must be drawn. *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009).

Further, "[t]he nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts"; a mere "scintilla of evidence in support of the nonmoving party's position will be insufficient to survive a summary

judgment motion." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010). Thus, once the moving party has satisfied its initial burden of "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact," *Creditor's Comm. of Jumer's Castle Lodge, Inc. v. Jumer*, 472 F.3d 943, 946 (7th Cir. 2007) (internal quotations and citations omitted), the non-moving party must come forward with sufficient evidence to "allow a jury to render a verdict in [its] favor." *McPhaul v. Bd. of Comm'rs*, 226 F.3d 558, 563 (7th Cir. 2000).

## III. ANALYSIS

**A. The Government's Motion for Summary Judgment**

As a preliminary matter, the court must address On-Site's Response to the government's Local Rule 56.1 statement. The parties are obliged to comply with this court's local rules. *See Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 630-31 (7th Cir. 2010) ("We have routinely held that a district court may strictly enforce compliance with its local rules regarding summary judgment motions."). Local Rule 56.1(b) requires that the party opposing summary judgment file a "concise response to the movant's statement"; that response must contain "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." L.R. 56.1(b)(3)(B). The rule warns that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."

Here, On-Site's responses often take the form of unsupported argument, as opposed to the concise response required. In addition, On-Site directs the court's attention to record citations that do not support On-Site's interpretation of the disputed fact. As one illustrative example, the government's third statement of fact ("GSOF") says that "[Special Agent] Ellis investigates possible *criminal* violations, a function distinct from the *regulatory* work done by FDA's Chicago District Office. Ellis Dep. at 45:6-10; 35:10-12." On-Site responds as follows:

> Plaintiffs admit that Ellis testified that she understood a distinction between her job and that of others who performed a regulatory function. However, Plaintiffs do[ ] not admit, and specifically den[y] that the distinction which Jocelyn Ellis has in her understanding has any truth or relevance to this matter. Indeed, the witness' answer to the questions at the pages cited by Defendant do not even fully support Ellis' contention, seemingly adopted by the government in its motion. For instance, at line 11 of page 45 (USA directs the court's attention only to lines 10) the question was asked: Q. And would those criminal violations be a violation of some regulatory policy? A. I don't know. Ellis Dep. at 45:11-13.

(Pl.'s Resp. to L.R. 56.1 Statement, ECF No. 39, at 1-2.) If On-Site wished to deny the truth of this fact, it needed admissible evidence of record to support its claim that there is no such distinction between FDA's criminal and regulatory work. Instead, On-Site cites a line of testimony that shows that Agent Ellis did not know whether criminal violations would also violate regulatory policy—a statement which does nothing to undercut the government's claim that Agent Ellis's job is to investigate criminal matters or that criminal investigations are a distinct area from the regulatory work done by FDA's Chicago District Office. On-Site was obliged to provide specific supporting citations, and the one it provided does not do the job. Therefore, the court will deem GSOF 3 admitted.

On-Site also addresses previously settled issues in its responses. For instance, in response to GSOF 12, On-Site "specifically den[ies] that there was a detention of Plaintiffs' property." But the court resolved this question in deciding the government's earlier motion to dismiss. *See On-Site Screening*, 2010 WL 3025039, at *3 ("In other words, the FDA first seized the property and then held it in custody, or detained it, for four years."). On-Site cannot create a genuine issue of material fact by calling into question the court's previous rulings. Therefore, GSOF 12 is also deemed admitted.

For the reasons given above, in addition to those facts specifically admitted by On-Site, GSOFs 3-6, 9-17, 19, 21, 24-25, and 28 are deemed admitted due to On-Site's failure to comply with the local rules.

1. <u>Detention by Law Enforcement Officer</u>

The United States has waived its sovereign immunity for a number of claims, including those "for money damages . . . for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). But that waiver is not the final word; there are a number of exceptions. In relevant part, 28 U.S.C. § 2680(c) provides that the waiver does not apply to "[a]ny claim arising in respect of . . . the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer." In other words, the government has maintained its immunity from suit against any claims stemming from a "detention" by any type of "law enforcement officer." *See Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 218, 220 (2008) ("Congress' use of 'any' to modify 'other law enforcement officer' is most naturally read to mean law enforcement officers of whatever kind.").

The court previously determined that agents working as part of the FDA Office of Criminal Investigations ("OCI") satisfied the definition of "law enforcement officers." *See On-Site Screening*, 2010 WL 3025039, at *4 n.2 ("Because OCI officials are authorized to investigate violations of the FDCA, seize evidence for the purpose of FDA investigations, carry firearms, and implement search and arrest warrants, OCI agents fit within the definitions of law enforcement officers discussed above."). The court denied the motion to dismiss because it was not able to conclusively resolve the identity of the individual(s) who had actually "detained" On-Site's property. The court noted at that time that the pleadings "suggest[ed] that On-Site's property was detained by OCI agents" but those documents were not "conclusive." Following the limited discovery period, the government now argues that it has established that OCI agents detained the samples because the OCI directed the investigation, effected the seizure of the biological samples, and maintained responsibility for the evidence until FDA's investigation was complete.

On-Site largely ignores the issues highlighted by the court in denying the government's motion to dismiss, and instead reargues its position that there was never a "detention." On-Site also appears to argue some type of Fourth Amendment claim, as it repeatedly states that FDA had no legal right to confiscate On-Site's property. (*See* Resp. to Mem. in Supp. of Summ. J., ECF No. 38, at 10.) Of course, that issue is not relevant to the matter at hand, as On-Site has not brought a Fourth Amendment claim. The only relevant point On-Site makes to address the government's argument is that OCI did not have physical possession of On-Site's property at the time of destruction, and at best OCI only had physical custody of the property at the time of the items were confiscated.[2] But

---

[2] On-Site contradicts this point by admitting that it "was told by the FDA they had [the property] and were preserving it under the same conditions they found it" and that

7

while physical possession is relevant, it does not conclusively determine which actor detained the goods, nor does On-Site cite any case to support this proposition.

The court previously found that 28 U.S.C. § 2680 used the word "detained" consistent with its ordinary meaning, and equated detention with exercising control over the property. *See On-Site Screening*, 2010 WL 3025039, at *3 ("On-Site has alleged that the FDA 'took possession' of its samples and 'continued to maintain control over' the samples for the next four years. In other words, the FDA first seized the property and then held it in custody, or detained it, for four years.") (citation omitted). The FDA has put forth uncontroverted evidence that OCI, and specifically Special Agent Ellis, maintained control over the samples while those samples were stored with the Illinois Department of Public Health. Although the state laboratory agreed to hold the samples, it did so at Agent Ellis's direction in her role as an agent with OCI; this is supported by Ellis's testimony, emails from the state laboratory, and the fact that OCI represented that it had possession of the samples and could release them to On-Site once FDA's investigation was complete. On-Site has provided nothing to contradict these facts; indeed, in addition to the facts the court deemed admitted On-Site itself agreed that "[Special Agent] Ellis stored the samples at the IDPH laboratory because the state laboratory 'was agreeable to hold the items.'" (Pl.'s Resp. to L.R. 56.1 Statement, ECF No. 39, at 5.) By admitting that Agent Ellis stored the samples, On-Site has conceded the critical point. As a consequence, On-Site's claim cannot survive summary judgment.

---

FDA's actions in failing to timely respond to the freezer breakdown is "tantamount to [FDA] destroying" On-Site's property. (*See* Resp. to Mem. in Supp. of Summ. J., ECF No. 38, at 3, 10.) Both of these arguments suggest that FDA exercised control over the confiscated items.

In sum, the court previously found that the samples had been "detained" and that OCI agents generally qualify as "law enforcement officers." Because the government has now provided evidence showing that OCI agents detained the samples, and because On-Site has failed to rebut this evidence, no question of material fact remains. On-Site's claim arises from the detention of its property by a law enforcement officer, and therefore the claim falls within the exception to the government's waiver of sovereign immunity. *See* 28 U.S.C. § 2680(c).

2. Forfeiture

On-Site argues that even if the biological samples were detained by law enforcement officers, the detention falls within the "forfeiture" exception to the exception, bringing the claim back under the waiver of sovereign immunity. 28 U.S.C. § 2680(C)(1) "re-waives" the United States' sovereign immunity where the property detained by a law enforcement officer "was seized for the purpose of forfeiture under any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense. *See Pearson v. United States*, 373 F. App'x 622, 623-24 (7th Cir. 2010). The Seventh Circuit has yet to decide whether this forfeiture must be "the *only* purpose" or "merely *a* purpose" of the seizure, although at least two appellate courts have held that forfeiture must be the sole purpose of the confiscation. *Pearson*, 373 F. App'x at 623; *see Bowens v. U.S. Dep't of Justice*, 415 F. App'x 340, 343 (3d Cir. 2011) (so holding); *Foster v. United States*, 522 F.3d 1071, 1075 (9th Cir. 2008) (same).

It does not matter in this case. The government has claimed that there is no evidence that forfeiture was ever contemplated; instead, the government states that the

samples were taken to secure the materials and to preserve potential evidence of a crime or violation of the Food, Drug, and Cosmetics Act. Due to On-Site's lack of compliance with the local rules, GSOFs 14 and 15 have been deemed admitted. Those statements provide that "[Special Agent] Ellis evinced her intent to secure the items as evidence, pending a criminal or civil prosecution" and that Ellis "referred to the blood and saliva samples and other detained items as 'evidence,' and expressed the intent to 'maintain' it." The admitted facts also establish that once Ellis became aware that neither a criminal prosecution nor a civil action would be filed, she took steps (albeit unsuccessfully) to the return the samples to On-Site. (Pl.'s Resp. to L.R. 56.1 Statement, ECF No. 39, at 9-11.) These facts indicate that no forfeiture was contemplated.

More importantly, On-Site has provided nothing to refute the government's evidence. On-Site seems to argue that the confiscation was a forfeiture because no one was charged with a crime, but the purpose of this argument (made without any supporting citation) is lost on the court. Once the government came forward with facts demonstrating an absence of a genuine issue of material fact, On-Site was obliged to "come forward with sufficient evidence to 'allow a jury to render a verdict in [its] favor.'" *McPhaul v. Bd. of Comm'rs*, 226 F.3d 558, 563 (7th Cir. 2000). On-Site did not do so, and therefore the court must conclude that the government is entitled to summary judgment.

**B. On-Site's Motion To Amend Its Complaint**

Finally, the court turns to On-Site's motion to amend its complaint. As noted, the court has discretion to deny leave to amend where the amendment would be futile, *see Johnson*, 641 F.3d at 872, and one example of futility is where "the amended pleading

could not survive a motion for summary judgment," *see Wilson*, 874 F.2d at 392. Although On-Site approaches from a variety of positions, On-Site's theory of liability is rooted in the alleged negligence of FDA in destroying On-Site's property. In support, On-Site sets forth a variety of duties that FDA allegedly breached, including bailment, failure to follow FDA internal protocols, the "duty of a volunteer," and a duty of reasonable care. (*See* First Am. Compl., ECF No. 29-1, ¶¶ 23-24.) These characterizations of the duty at issue do not do any good. As the court previously noted, "the FTCA exempts *any claim* arising in respect of . . . the detention of any goods, merchandise, or other property," and On-Site "cannot plead its way around sovereign immunity simply by avoiding magic words." *On-Site Screening*, 2010 WL 3025039, at *3 (quotations and alterations omitted). Regardless of how On-Site characterizes its claim for damages, that claim clearly arises in respect of the detention (and ultimate destruction) of its property. Therefore, the amended complaint could not survive summary judgment. As the amendment is futile, it is denied.

## IV. CONCLUSION

The government's motion for summary judgment is granted, and On-Site's motion to amend its complaint is denied. The case is dismissed with prejudice.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: August 3, 2011

11